# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| **Karsten O. Allen,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | 1:20cv780 (TSE/JFA) |
| ) | |
| **J. Mayo, et al.,** ) | |
|     **Defendants.** ) | |

### MEMORANDUM OPINION

Karsten O. Allen ("Allen" or "Plaintiff"), a Virginia inmate proceeding pro se, filed a civil-rights action pursuant to 42 U.S.C. § 1983, alleging the defendants deprived him of his right to be present at his disciplinary hearing, at which he was convicted and the conviction later overturned; and denied him of an interim review to have his good conduct allowance ("GCA") level corrected after the institutional conviction was overturned. [Dkt. No. 1 at 7-8, 8]. Defendants have filed a motion for summary judgment, supported by affidavits with exhibits attached. [Dkt. Nos. 29, 30]. Allen has been afforded the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he has responded. Allen has also filed a motion for summary judgment, supported by exhibits and an affidavit [Dkt. Nos. 34, 35],[1] as well as a motion for sanctions. [Dkt. No. 36]. Accordingly, this matter is now ripe for disposition. For the reasons that follow, defendants' motion for summary judgment must be granted, and plaintiff's motions for summary judgment and sanctions must be denied.

---

[1] In his response to the motion for summary judgment, Allen appears to be attempting to amend his complaint by adding a substantive due process claim. [Dkt. No. 35 at 9]. A claim raised in opposition to a motion for summary judgment is not properly before the Court. See Klein v. Boeing Co., 847 F. Supp. 838, 844 (W.D. Wash. 1994). Allen cannot amend his complaint by raising new matters in a response to a motion. See Hurst v. District of Columbia, 681 F. App'x. 186, 194 (4th Cir. 2017) ("a plaintiff may not amend her complaint via briefing") (citing Commonwealth of Pennsylvania v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)). Such a claim raised "via briefing" is not properly before the Court and will not be addressed here.

Allen's two claims stem from an October 15, 2019 disciplinary conviction that was subsequently overturned on February 13, 2020. [Dkt. No. 1 at 4-7].

> 1. Allen was denied his right to due process to be present at his disciplinary hearing because defendants Officer J. Mayo, Officer J. Smith, Captain Johnson, Institutional Hearing Officer J. Feltner, Unit Manager T. S. Foreman, and Warden Hamilton because of the submission, review, use, and upholding of his conviction based upon a falsified "Refusal to Appear" form. [Id. at 7-8].
>
> 2. Unit Manager L. Fields denied Allen his due process rights because he refused to provide Allen an interim review to correct his "good time earning level" to remedy Allen's "loss of good time due to" the overturned disciplinary conviction and Fields actions "upheld the taking of the good time credits." [Id. at 8].

Defendants contend that Claim 1 does not involve a loss of a liberty interest because the penalty imposed was a loss of visitation and telephone privileges, which is not an "atypical and significant hardship … in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Defendants argue that Claim 2 has no merit because Allen did not lose any accumulated good time credits and he has no protected liberty interest in remaining in or being assigned to a particular good conduct allowance level. Plaintiff argues he is entitled to summary judgment because the defendants submitted and relied upon a false statement that he had refused to attend the hearing, which was later proved true and his conviction was overturned; and that defendant Fields denied him an interim review to correct his "good time earning level," which was based upon the disciplinary charge that was overturned.

## I. Undisputed Facts

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, set forth a statement of material facts that defendants contend are undisputed. In response, plaintiff substantially complied with his obligations under those Rules by submitting statements of

undisputed facts, although plaintiff failed to comply with the mandate to cite to specific record evidence.[2]

Accordingly, the following statement of uncontested facts is derived from a review of defendants' statement of undisputed facts, plaintiff's responses, and the record.

1. Allen is and has been at all times pertinent to this action, an inmate incarcerated within VDOC and housed at either Sussex I State Prison (Sussex I) or Keen Mountain Correctional Center (Keen Mountain).

2. On September 20, 2019, while Plaintiff was incarcerated at Sussex I, Correctional Officer T. Johnson charged Allen with Disciplinary Offense #201, Disobeying an Order, after Allen refused to return to his cell and lockdown as instructed following in-pod recreation. [Dkt. No. 30-1 at ¶ 4 and Enclosure A].

3. Allen was served with a copy of the charge on September 21, 2019 and declined the penalty offer. The disciplinary hearing was held on October 15, 2019. [Id. at 4-5]. On the date of the hearing, defendants Mayo, Smith and Johnson signed a refusal to attend the hearing form indicating that Allen refused to appear because he was at recreation. [Id.] The hearing was conducted in Allen's absence, and he was found guilty based on the reporting officer's written testimony. [Id.] The Inmate Hearings Officer, defendant Feltner, imposed a penalty of the 30-day loss of telephone privileges and the 30-day loss of visitation privileges. [Id.]. Defendant Foreman approved the charge and disposition. [Id. at 4].

4. Allen appealed the Inmate Hearings Officer's decision to the Warden, defendant Hamilton, who upheld the decision on November 26, 2019. [Id. at ¶ 5 and Enclosure B].

---

[2] The record of admissible evidence includes defendants' affidavits and exhibits, and plaintiff's verified complaint [Dkt. No. 1]; and his memorandum in support of his motion for summary judgment [Dkt. No. 35] and plaintiff's "Affidavit" in his memorandum in support of his cross motion for summary judgment. [Dkt. No. 37]. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (verified pleadings are the "equivalent of an affidavit").

5. Allen subsequently wrote to the Offender Discipline Unit ("ODU") complaining about his disciplinary conviction because he had not been outside for recreation on October 15, 2019 as stated in the refusal form. [Id. at 9, 14-15]. On February 13, 2020, the ODU investigated the matter, confirmed Allen was not outside and overturned the charge. [Id. at 13]

6. Records reflect that Allen received his 2019 annual review at Sussex I on December 2, 2019. [Dkt. No. 30-2 at ¶ 6 and Enclosure A]. Allen scored in Earning Level II during his annual review and his evaluation was approved by Ms. Foreman, at Sussex I, on January 13, 2020. [Id.]. During the 2019 annual review approved by Ms. Foreman, Allen's earning level did not change from his 2018 annual review, at which time he also scored in Earning Level II. [Id.].

7. Allen was transferred to Keen Mountain on February 21, 2020 "for an unrelated administrative matter." [Dkt. Nos. 1 at ¶ 29; 30-2 at ¶ 4].

8. Allen was initially assigned to Building B, a general population assignment, which was overseen by defendant Unit Manager Fields. [Dkt. No. 30-2 ¶¶ 4, 7].

9. While in Building B, Allen's Counselor was Counselor Booth. [Id. at ¶ 5; Dkt. No. 1 at ¶ 29].

10. If an inmate wants an interim review of his classification, the inmate must submit a request form to his Counselor explaining the reasons why the review is warranted. [Id. at ¶ 5].[3] The inmate's assigned counselor then reviews the request to determine if the inmate meets the criteria for an interim review. [Dkt. No. 30-2 at ¶ 5]. The request is then forwarded to the appropriate Unit Manager or Chief of Housing Unit and Programs. [Id.].

---

[3] See https://www.vadoc.virginia.gov/files/operating-procedures (VDOC Operating Procedure 830.1, Institution Classification Management, Offender Management & Programs, click on 830.1 Facility Classification Management, last accessed April 30, 2021).

11. Unit Manager Fields does not recall receiving a request from Counselor Booth to conduct an interim review for Allen. [Id. at ¶ 5]. Records do not reflect that Allen asked Counselor Booth for an interim review or that such request was made of Counselor Booth. [Id.]. The CORIS database indicates that an interim review of Allen's good time earning level was not done in 2020 at Keen Mountain. [Id.].

12. Allen desired an interim review because he believed his score from the review at Sussex I on December 2, 2019 would change due to the charge being overturned by the ODU. [Dkt. No. 35 at 2]. Allen asked Booth, verbally, to conduct an interim review on or about February 21, 2020. [Id.]. At some time after speaking with Booth, Allen spoke with defendant Fields who Allen says told him to submit a request and Fields would look into it.

13. Allen remained in Building B until he was moved to segregation in Building C on April 30, 2020, after he received Disciplinary Charge #111, intentionally destroying state property, for kicking his cell door. [Dkt. No. 30-2 at ¶ 7 and Enclosure B].[4] Once Allen was moved to Building C on April 30, 2020, defendant Fields was no longer Allen's Housing Manager and had no control over what occurred in Building C. [Id. at ¶ 7]. With the transfer to Building C, Counselor Booth was also no longer Allen's counselor. [Id.].

14. On May 3, 2020, Allen filed an informal complaint in which he alleged he had been denied an interim review to consider the overturned conviction by the ODU. On May 18, 2020, defendant Fields responded to the informal complaint and stated that "they had been in the process of reviewing [Allen's] alleged 'errors' on your annual review from Sussex I when" Allen was placed in the Restrictive Housing Unit ("RHU"). [Dkt. No. 1-2 at 11; Dkt. No. 36-1].

---

[4] Allen filed a § 1983 civil action against Fields in the Western District of Virginia on April 12, 2021. Allen v. Fields et al., 7:21-cv-00207-TTC-RSB (Allen II) (filed April 12, 2021). The factual allegations in that complaint overlap with those set forth in the present complaint regarding Fields. Allen II, Dkt. No. 1 at 2.

15. On May 20, 2020, Allen was found guilty of the April 30, 2020 charge, Disciplinary Charge #111, intentionally destroying state property, for kicking his cell door, and fined $15 dollars. [Dkt. No. 30-2].

16. The evaluation of an inmate's security level and good time earning level by the assigned counselor and the ICA during the inmate's annual review is a separate process from the disciplinary hearing process. [Id. at ¶ 8]. While disciplinary charges are one of several factors that have a bearing on the evaluation and scoring of an inmate's good time and security level, it is not the only factor. [Id.].

17. Records indicate that during Allen's December 2020 annual review at Keen Mountain, Allen scored in and was assigned to Earning Level IV. [Id. at ¶ 9 and Enclosure C]. He continues to earn sentence credit at Level IV, which means that he receives zero credit for every 30 days served. [Id.]. The Sussex I charge was not noted or mentioned in the December 2020 annual review.

## II. Standard of Review

"When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, LLC, 630 F.3d 351, 354 (4th Cir. 2011). Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment has the initial burden to show the absence of a material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255. Parties asserting

that a fact cannot be or is genuinely disputed must comply with the requirements of Fed. R. Civ. P. 56(c) and Local Civ. R. 56(B).

### III. Analysis

Plaintiff alleges his Fourteenth Amendment rights were violated at the October 15, 2019 disciplinary hearing because the defendants submitted and relied upon a false statement that he had refused to attend the hearing, which was later proved true and his conviction was overturned; and that defendant Fields denied him his due process rights because he refused to provide Allen an interim review to correct his "good time earning level," which was based upon the disciplinary charge that was overturned. The defendants move for summary judgment asserting that Allen had no liberty interest at stake with regard to the disciplinary hearing and that plaintiff suffered no prejudice in his December 2, 2019 score for his January 13, 2020 review. [Dkt. No. 30 at 6-9 11]. Plaintiff responds that he has a liberty interest and that the defendants denied him a hearing in violation of Wolff v. McDonnell, 418 U.S. 539 (1974). [Dkt. No. 35 at 3-4]. Plaintiff asserts that Fields was aware of his request for an interim review and that he failed to conduct such a review that would have corrected his good time allowance level and restored lost good time from the Sussex I conviction that was overturned. [Id. at 8].

*A. Claim 1: October 15, 2019 Disciplinary Hearing*

As a matter of law, Allen's motion for summary judgment must be denied. The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. Allen's allegations, even if true, do not state a claim upon which relief can be granted because he has failed to identify a protected liberty interest that would trigger the application of the due process procedures set forth in Wolff, 418 U.S. at 556-57.

"To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). Prisoners possess a liberty interest only in (1) state-created entitlements to early release from incarceration, see Bd. of Pardons v. Allen, 482 U.S. 369, 381 (1987), and (2) being free from conditions that "impose[] atypical and significant hardship … in relation to the ordinary incidents of prison life." See Sandin, 515 U.S. at 484. Where a plaintiff fails to identify a protectable liberty or property interest that the defendant's actions placed in jeopardy, he fails to establish that he is owed any level of procedural protection. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005) ("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty [or property] interest").

Thus, the due process question presents two related but distinct inquiries: whether the loss at issue implicates a liberty interest triggering procedural due process requirements; and, if so, whether the procedures afforded plaintiff satisfied those requirements. See Dilworth v. Adams, 841 F.3d 246, 250-51 (4th Cir. 2016); see also Prieto, 780 F.3d at 259 ("Once a liberty interest is established, the question then becomes what process is due to protect it."). Allen's claim is premised upon his implicit belief "that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause." Sandin, 515 U.S. at 484. His premise is mistaken because "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," temporarily losing privileges as "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Id. at 486.

Here, Allen assumes his loss of telephone privileges and visitation are losses that implicate a liberty interest and that a violation of the procedures outlined in Wolff entitles him to relief.

8

Allen's position is incorrect.[5] Allen's allegation that he was denied his right to be present at the hearing because of the false refusal to appear form fails to state a viable due process claim because neither a loss of telephone privileges nor visitation involve a recognized liberty interest.

It is well established that inmates do not have an absolute right to use a telephone. United States v. Alkire, No. 95-7885, 82 F.3d 411 (table), [published in full-text format at 1996 U.S. App. LEXIS 7021*1-2] (4th Cir. Apr.10, 1996) ("Alkire's complaint that the portion of the sentence restricting his use of a telephone while in prison is without merit; there is no constitutional or federal statutory right to use of a telephone while in prison.").[6] Thus, plaintiff's loss of telephone privileges simply does not rise to a level deserving of constitutional protection.

Likewise, it is well settled that loss of visitation privileges does not implicate a liberty interest. "The Fourth Circuit has recognized that 'there is no absolute right to prison visitation,' nor is there a 'constitutional right to prison visitation, either for prisoners or visitors ….'" Alkebulanyahh v. Ozmint, 2009 U.S. Dist. LEXIS 59779, *9-10 (D.S.C. July 13, 2009) (quoting White v. Keller, 438 F. Supp. 110, 114-15 (D. Md. 1977), aff'd, 588 F.2d 913 (4th Cir. 1978)),

---

[5] The minimum procedural due process requirements in a disciplinary hearing that involves a loss of a liberty interest are: (1) written notice of the claimed violation at least 24 hours prior to the disciplinary hearing; (2) a written statement by the adjudicator as to the evidence relied upon and the reasons for the disciplinary action; and (3) the right to call witnesses and present evidence, when doing so would not be "unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 563-66. The Fourth Circuit noted that Wolff held "inmates are not entitled to confront the witnesses against them, nor are they guaranteed the right to retained or appointed counsel." Brown v. Braxton, 373 F.3d 501, 504-05 (4th Cir. 2004) (citing Wolff, 418 at 567-70).

[6] See also Freitas v. Ault, 109 F.3d 1335, 1337-38 (8th Cir. 1997) (finding that an involuntary transfer to a higher-security facility and loss of work and phone privileges did not constitute atypical and significant hardship); Boriboune v. Litscher, 91 F. App'x 498, 500 (7th Cir. 2003) (loss of telephone privileges while in disciplinary segregation implicated no liberty interest and triggered no due process protection); Smith v. Roper, 12 F. App'x. 393, 396 (7th Cir. 2001), cert, denied, 534 U.S. 1093 (2002) ("In light of Sandin, the deprivations that Smith suffered as a result of the disciplinary proceedings — namely, 22 days in segregation, a six-month loss of privileges associated with his demotion to C class, and six days without phone privileges — do not implicate a liberty interest."); see, e.g., Tanney v. Boles, 400 F. Supp. 2d 1027, 1040 (E.D. Mich. 2005) (citations omitted) (concluding that an inmate's loss or restriction of telephone privileges for disciplinary reasons is not considered an atypical significant hardship, even when the disciplinary charges are allegedly false, and therefore does not implicate a liberty interest protected by due process); Husbands v. McClellan, 990 F. Supp. 214, 217 (W.D.N.Y. 1998) ("The temporary loss of the various privileges alleged in this case — i.e., telephone, package, commissary, and recreation privileges — does not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on an inmate.").

aff'd, 358 F. App'x. 431 (4th Cir. 2009).

> Neither prisoners nor would-be visitors have a constitutional right to visitation. White v. Keller, 438 F. Supp. 110, 115 (D. Md. 1977) (but leaving open the possibility that a permanent ban on all visitation could implicate the Eighth Amendment), aff'd, 588 F.2d 913 (4th Cir. 1978); see also Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461 (1989) (finding no right to visitation guaranteed by the Due Process Clause). In sum, visitation is a privilege, not a constitutional right. Wright v. Vitale, 937 F.2d 604 (4th Cir. 1991).

Dunford v. McPeak, No. 7:08cv00018, 2008 U.S. Dist. LEXIS 5229, *9 (W.D. Va. Jan. 24, 2008).[7]

As noted in Dunford, "[a]pplying Sandin, it is clear that the loss of visitation privileges is 'within the normal limits or range of custody which the conviction has authorized the [prison authorities] to impose,' id., 515 U.S. at 478, and plaintiff experienced no atypical hardship. Thus, there is no federal right to enhanced procedural protections at issue here." 2008 U.S. Dist. LEXIS 5229, *7 n.6.[8]

Further, a violation of one of Wolff's procedural protections, standing alone, does not constitute a due process violation. Bills v. Heyns, No. 15-cv-11415, 2015 U.S. Dist. LEXIS 150198, *4 (E.D. Mich. Nov. 5, 2015) ("the procedural protections established in Wolff are not implicated" unless the disciplinary conviction involves a "liberty interest").

> the procedural mandates of Wolff are not applicable absent disciplinary punishment that results in an actual deprivation of a constitutionally protected liberty or property interest. In other words, even if the plaintiff had sufficiently shown a

---

[7] See Ware v. Morrison, 276 F.3d 385, 387 (8th Cir. 2002) (holding that plaintiff's due process rights were not violated when his visitation rights were taken away without a hearing because "loss of visitation privileges [are] within the ordinary incidents of confinement" and "[o]nly sanctions that impose atypical and significant hardships ... in relation to the ordinary restraints and incidents of prison life implicate the Due Process Clause"); Berry v. Brady, 192 F.3d 504, 508 (5th Cir. 1999) (inmate "has no constitutional right to visitation privileges"); see also Singleton v. Cecil, 176 F.3d 419, 424 (8th Cir. 1999) (en banc) ("'Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated,' … and 'the possession of a protected life, liberty, or property interest is ... a condition precedent' to any due process claim.'") (citation omitted).

[8] There is also no violation of due process where a disciplinary conviction is overturned in the administrative process. See Morissette v. Peters, 45 F.3d 1119, 1122 (7th Cir. 1995) ("no denial of due process if the error the inmate complains of is corrected in the administrative appeal process"); see also Wycoff v. Nichols, 94 F.3d 1187, 1189-90 (8th Cir. 1996) (finding no liberty interest at stake where a prisoner served forty-five days in administrative segregation before disciplinary decision was reversed). In addition, "[a] claim that a prisoner was 'improperly charged with things he did not do,' standing alone, does not state a due process claim." Harris v. Smith, 482 F. App'x. 929, 930 (5th Cir. 2012) (quoting Collins v. King, 743 F.2d 248, 253 (5th Cir. 1984)).

>  violation of procedural due process in connection with the disciplinary charge, the resulting punishment would have to be such that it "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."

Perdue v. White, No. 7:14cv2143, 2015 U.S. Dist. LEXIS 87809, *4-5 (N.D. Ala. May 4, 2015), adopted by, 2015 U.S. Dist. LEXIS 87130 (N.D. Ala., July 6, 2015); cf. Fraley v. Spaventa, No. 5:17cv201 (FDW), 2020 U.S. Dist. LEXIS 10345, *25 (W.D.N.C. Jan. 22, 2020) (finding plaintiff's claim that he "was not allowed to attend" his disciplinary hearing immaterial to due process claim where plaintiff had not been stripped of a protected liberty or property interest at disciplinary hearing); Hines v. Ray, No. 7:05cv565, 2005 U.S. Dist. LEXIS 37616, at *8-9 (W.D. Va. Sept. 22, 2005) ("[P]risoners are only afforded procedural due process protections, such as written notice of charges and the right to call witnesses, when the loss of statutory good time credits or some other liberty interest is at issue. Hines' sole punishment for this conviction was a $10.00 fine .... Therefore, Hines was not entitled to any procedural safeguards during the institutional hearing.") (citation omitted).

For the above reasons, not only must Allen's motion for summary judgment be denied, but the defendants' motion for summary judgment must be granted.

*B. Claim 2: Denial of an Interim Review*

Allen asserts he is entitled to summary judgment because he requested an interim review and Defendant Fields denied him an interim review. Defendant Fields has disputed whether Allen requested such a hearing because the VDOC's records do not reflect that a request was filed and, that as of April 30, 2020, Fields no longer had any authority over an interim review for Allen because Allen was transferred to the RHU. Fields also contends, as a matter of law, Allen has no due process claim. Given that defendant Fields disputes the material facts upon which Allen relies, Allen's motion for summary judgment must be denied.

Defendant Fields' motion for summary judgment presents two independent rationales. First, Fields correctly points out that Allen does not have a liberty interest in any particular

11

classification or good conduct time earning rate.[9] See James v. Robinson, 863 F. Supp. 275, 278 (E.D. Va. 1994) ("Inmates have no protected liberty interest in remaining in or being assigned to a particular good conduct allowance level."), aff'd, 45 F.3d 426 (4th Cir. 1994) (unpublished); see also Ewell v. Murray, 813 F. Supp. 1180, 1182 (W.D. Va. 1993) ("The due process clause does not create for a prison inmate a liberty interest in earning a certain number of good time credits.") (citation omitted). The Western District recently issued an opinion that closely mirrors Allen's claim. Spratley v. Mabrey, No. 7:19cv837, 2021 U.S. Dist. LEXIS 25582 (W.D. Va. Feb. 10, 2021).

Spratley, like Allen, involved two interrelated claims. Spratley's first claim alleged he had been denied a liberty interest because he had been denied a witness and video evidence at his disciplinary hearing in which he was found guilty and assessed a fine. The district court found that the imposition of a fine did not rise to the level of a liberty interest and dismissed the first claim. Id. at *2-6. Spratley's second claim alleged "that this conviction reduced his good time earning level," which "in turn, delayed his mandatory parole release date and, he claims, reduced the likelihood that he would be granted discretionary parole." Id. at *2. Spratley held that to the extent that the existence of his conviction could affect his good time earning level, that effect does not trigger constitutionally protected due process rights because

> Virginia prisoners have no liberty interest in any particular classification or good conduct time earning rate, either derived from the United States Constitution, Wolff v. McDonnell, 418 U.S. 539, 557 (1974), or as the result of Virginia laws or policies, Garner v. Clarke, No. 7:18CV00560, 2019 U.S. Dist. LEXIS 157999 (W.D. Va. Sept. 17, 2019), appeal dismissed and remanded for further consideration of the due process claim, No. 19-7601 (4th Cir. Oct. 23, 2019). See also Mills v. Holmes, 95 F. Supp. 3d 924, 931-34 (E.D. Va. 2015) (analyzing Virginia statutes and VDOC regulations and concluding that "maintaining a particular ... earning level" for good conduct "is not a protected liberty interest in Virginia"). The Fourth Circuit has also so held, although in an unpublished decision. West v. Angelone, 165 F.3d 22, [published in full-text format at 1998

---

[9] Allen does not appear dispute this point and states in his affidavit that he has "not in his complaint nor now allege that a 'change' in [his] good time earning level is a protected liberty interest…." [Dkt. No. 37 at 2].

12

> U.S. App. LEXIS 27495] (4th Cir. 1998) (unpublished table decision) ("Inmates have no protected liberty interest in remaining in or being assigned to a particular good conduct allowance level ...."). Thus, no due process claim can be asserted based on any change in [an inmate's] good time earning level as a result of this conviction.

Spratley, 2021 U.S. Dist. LEXIS 25582, *6.

Allen alleges that Fields' alleged denial of the interim review was a "taking of good time credits." [Dkt. No. 1 at 8]. Allen's position is not only contrary to well settled law, but Allen points to no evidence that he has lost any accumulated good time credits. Instead, Allen's reference to "loss" refers to potential future credits and not accrued good time credits. The distinction is of significance because he has no such liberty interest in potential future credits. See Dennis v. Clarke, No. 3:15cv603, 2016 U.S. Dist. LEXIS 110036, at *18 (E.D. Va. Aug. 17, 2016) ("It is well established that Virginia inmates do not enjoy a protected liberty interest in the rate at which they earn either Earned Sentence Credits or Good Conduct Allowances.") (citing many cases); Deblasio v. Johnson, 128 F. Supp. 2d 315, 330 (E.D. Va. 2000); ("while the Virginia Code and relevant VDOC regulations require prison officials to provide opportunities for inmates to earn GCA credits, they also give officials *absolute discretion* over GCA classification….Thus, Virginia has not created a statutory or regulatory interest in a particular GCA classification.") (citing James, 863 F. Supp. at 277-78; Ewell, 813 F. Supp. 1180, 1182-83); Holmes v. Cooper, 872 F. Supp. 298, 302 (W.D. Va. 1995) ("The opportunity to earn good time credits is not a constitutionally established liberty interest."); cf. Gaskins v. Johnson, 443 F. Supp. 2d 800, 805 (E.D. Va. 2006) (even if an "infraction resulted in reducing the good-time credits he might earn *in the future*; it did not result in his losing any already-earned credits. This distinction is important because prisoners have no liberty interest in obtaining or retaining a specific prison classification level to allow them to obtain an early release."). Consequently, defendant Fields motion for summary judgment on this ground will be granted.

In addition, under VDOC OP 830.1, the interim review process starts with the Counselor,

not Fields. While Fields response to the informal complaint on May 18, 2020 indicated that "they were in the process of reviewing [Allen's] alleged errors on [Allen's] annual from Sussex I," the response continues noting that the process ended "when [Allen] was placed in the RHU," and that no one had denied Allen "anything." [Dkt. No. 36-1]. The statement Allen attributes to Fields obviously refers to VDOC OP 830.3, which states in pertinent part that "[a]n offender who is confined to a restrictive housing unit is not eligible for advancement to Class Level I." VDOC OP 830.3(V)(G). At the time he was transferred to keen Mountain, Allen was at Level II, which means he was seeking an interim review to obtain Level I.

Thus, it appears from Allen's own exhibit that the process of an interim review (whether officially or unofficially underway) was terminated by Allen's transfer to the RHU, and not by Fields actions.[10] See Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) ("[C]onstitutional torts … require a demonstration of both but-for and proximate causation" and "intervening acts of other[s]" may "insulate" a defendant from liability). Accordingly, Defendant Fields did not cause the denial of an interim review as alleged and he is entitled to summary judgment on this ground as well.

### C. Plaintiff's Motion for Sanctions

Allen seeks sanctions on the defendants and defense counsel for statements that Fields made in the affidavit submitted in support of Fields motion for summary judgment. Allen argues that Fields' statements that he did "not recall specifically talking with Allen about his good time" and that the records do "not reflect that Allen asked Counselor Booth for an interim review or that the request was made of" Fields. [Dkt. No. 36 at 1; Dkt. No. 30-2 at 2]. Allen alleges that

---

[10] Allen has filed suit against Fields and others in the Western District of Virginia alleging in his complaint that Fields filed a false disciplinary charge on April 30, 2020 that resulted in Allen being transferred to segregation. Allen alleges that after asking Fields about the interim review, Fields yelled at Allen to "stop asking about that," Allen II, No. 7:21cv207, Dkt. No. 1 at 4, and states he responded to Fields that Fields was denying him "good time" and that Allen intended to file a lawsuit. Allen then alleges that Fields filed a false disciplinary charge against him for destruction of state property (kicking his cell door), and Allen was transferred to segregation. Id.; 1-1 at 2. The April 30, 2020 institutional conviction has, therefore, clearly not been overturned.

14

Fields two statements were untruthful and Fields "willfully and intentionally" made the untrue statements. [Dkt. No. 36 at 2]. Allen contends he is entitled to sanctions against defendant Fields and counsel for the defendants, pursuant to Federal Rules of Civil Procedure 11(b)(3), 11(b)(4), and 56(h).

"Whether to award sanctions under Rule 56(h) ... is within the district court's sound discretion." La Michoacana Nat., LLC v. Maestre, No. 3:17cv727, 2020 U.S. Dist. LEXIS 42951, *22 (W.D.N.C. Mar. 12, 2020) (citing Six v. Generations Fed. Credit Union, 891 F.3d 508, 518-19 (4th Cir. 2018)); Nationwide Mut. Fire Ins. Co. v. D.R. Horton, Inc., No. 15-351-CG-N, 2016 U.S. Dist. LEXIS 160148, *13-14 (S.D. Ala. Nov. 18, 2016) (recognizing that in the context of sanctions under Rule 56(h), the Court "has wide discretion in deciding what constitutes bad faith.") (citation omitted). Federal Rule of Civil Procedure 56(h) provides:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

See Stern v. Regency Towers, LLC, 886 F. Supp. 2d 317, 327 (S.D.N.Y. 2012) (for purposes of Rule 56(h), "'bad faith,' … ha[s been] found only when the attorneys conduct is 'egregious,' such as 'where affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case."). "Sanctions under Rule 11 are appropriate only in 'extraordinary circumstances.'" Id.

Contrary to Allen's argument, simply because an affiant does not recall a conversation does not equate to a false or untrue statement, and there is nothing false or untrue about the records not reflecting a request was filed. See United Energy Corp. v. United States, 622 F. Supp. 43 (D. Cal. 1985) (failure to accurately recall events not bad faith); see also Raher v. Federal Bureau of Prisons, No. 03:09cv526 (ST), 2011 U.S. Dist. LEXIS 117725, *22 (D. Or. Oct. 12, 2011) ("Bad faith in the context of Rule 56(h) requires a deliberate or knowing act for

15

an improper purpose. Affidavit testimony that is materially contradicted by prior deposition testimony alone is not sufficient to show the necessary bad faith under Rule 56(h).").

Prison personnel interact with hundreds of inmates throughout the course of a single day and for that very reason it is not surprising that VDOC regulations require inmates submit a form of some sort so that a record is established and the VDOC can track matters. Allen has not established any "egregious conduct" that would warrant sanctions and there is no clear evidence that the statements at issue are either false or submitted in bad faith. Fort Hill Builders, Inc. v. Nat'l Grange Mut. Ins. Co., 866 F.2d 11, 16 (1st Cir. 1989). Even if an affidavit "suffers from severe inattention to detail and/or employs misleading language, it does not amount to a deliberate or knowing act for an improper purpose" such as to warrant sanctions. Cableview Communs. of Jacksonville, Inc. v. Time Warner Cable Se., LLC, No. 3:13-cv-306 (J/JRK), 2018 U.S. Dist. LEXIS 236948, *28 (M.D. Fla. Mar. 19, 2018). It is within the court's discretion to deny sanctions even "when an affidavit or declaration 'suggests a misleading implication,' a request for sanctions under Rule 56(h) can be denied because 'bad faith in the context of Rule 56(h) requires a deliberate or knowing act for an improper purpose.'" Id.

Allen relies heavily on Fields May 18, 2020 response to his informal complaint as support that Fields statements he does not recall Allen's request and that no record exists of a written request from Allen is untrue. However, Allen's belief that Fields is not being truthful, alone, is insufficient to warrant sanctions. See Booker v. Robinson, 2015 U.S. Dist. LEXIS 91675 (E.D. Va. July 14, 2015) (denying a motion for sanctions pursuant to Rule 56(h) where the only evidence that an affidavit had been submitted in bad faith was plaintiff's own disagreement with the affidavit), vacated and remanded on other grounds, 644 F. App'x. 219 (4th Cir. 2016). Lastly, there is no evidence that defendants' counsel acted in an improper manner.

## V. Conclusion

For the foregoing reasons, defendants' motion for summary judgment [Dkt. No. 29] must

be granted, plaintiff's motions for summary judgment [Dkt. No. 34] and sanctions [Dkt. No. 36] must be denied. An appropriate order will issue alongside this memorandum opinion.

Entered this __4th__ day of __May__ 2021.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge